# August Schultz, Defendant in Error, v. Henry Ericsson Company, Plaintiff in Error.

## Gen. No. 18,074.

1. MASTER AND SERVANT, § 316*—*when servant assumes risk arising from unsafe scaffold.* In a common law action for injuries resulting to servant for failure of master to furnish a reasonably safe scaffold, servant assumes the risk when the defects are obvious.

2. BUILDING RESTRICTIONS AND REGULATIONS, § 1*—*defenses not available in action for injuries resulting from unsafe scaffold.* Contributory negligence and assumption of risk no defense to an action for injuries sustained by a servant by reason of failure of master to furnish a safe and proper scaffold, under Hurd's R. S. ch. 48, § 79, J. & A. ¶ 5368.

3. MUNICIPAL COURT OF CHICAGO, § 13*—*sufficiency of statement of claim.* Statement of claim in a fourth class action need not properly name plaintiff's right of action.

4. MUNICIPAL COURT OF CHICAGO, § 29*—*when statement of claim sufficient to support verdict.* Objection that the verdict is not supported by the statement of claim is untenable in a fourth class action when the statement of claim is sufficient to apprise the defendant of the nature and character of the suit brought.

---

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

Error to the Municipal Court of Chicago; the Hon. Hosea W. Wells, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed October 15, 1913.

Frank M. Cox and R. J. Fellingham, for plaintiff in error.

S. M. Meek and John P. McDonald, for defendant in error.

Mr. Justice Duncan delivered the opinion of the court.

This writ of error is prosecuted by Henry Ericsson Company to reverse a judgment against it in favor of August Schultz in the sum of one thousand dollars for personal injuries sustained by him.

Defendant in error sets forth in his statement of claim that his claim was for injuries sustained June 21, 1909; that plaintiff in error was then contractor erecting a certain building on the east side of Indiana avenue, near Twenty-second street, in Chicago, and that he was employed by the Company as a common laborer; that plaintiff in error then and there failed to furnish him a proper, safe and sufficient scaffold for him to work upon; and that his claim further is for injuries sustained on said date while employed by plaintiff in error on said building, and that plaintiff in error then and there employed an incompetent servant, well knowing him to be incompetent, to the damage of defendant in error in the sum of one thousand dollars.

The substance of the evidence for the defendant in error is that the building was of steel and brick and had advanced in construction to about the level of the second floor whereon the masons were laying brick in the north wall; that about the center of the building was a hoist so constructed that when a loaded wheelbarrow came upon it an empty one would go down; that there was a platform around the hoist from the south side of which ran a runway or scaffold five or

six feet wide to the west wall, and from thence north along the west wall of the building to the north wall, and thence east on the north wall, ran platforms or scaffolds consisting of thirteen planks each ten inches wide, the planks in all of the platforms being placed longitudinally with the platforms, so that wheelbarrows pushed over them would run the planks lengthwise; that on the west side of the scaffold along the west wall of the building mortar boards were laid one foot from the wall, and just east of the mortar boards brick were piled upon the scaffold through its whole length about two feet high, sloping down to the height of a single brick on the east edge of the pile, leaving a clear space between the east edge of the brick and the east edge of the scaffold of five or six feet; that about eighteen inches east of the east edge of that scaffold for its entire length there was laid flat down another single width plank platform for the purpose of catching a laborer by his stepping or jumping on it in case he should lose his balance; that there were no guard rails or other contrivances to prevent materials or men from falling off the east side of the scaffold or over the east plank which were to be used for the wheelers of brick and mortar; that there were eight or ten men that day, including defendant in error, engaged in wheeling brick and mortar from the hoist over those scaffolds to the masons, in wheelbarrows about thirty inches wide; that defendant in error began work at 8 o'clock that morning and was injured about 10:30 A. M., the superintendent of plaintiff in error being present all the time and directing the work; that a loaded wheelbarrow of mortar came up for his last trip with the handles south as usual, and in the usual manner he backed it south and turned west on the first platform and proceeded to the west platform or scaffold and thence north on the west platform or scaffold about twenty feet where he met his colaborer, Donato Magliano, returning on the westerly side of that platform to the hoist with an empty wheel-

barrow; that Magliano stopped with the legs of his wheelbarrow very close to the brick pile to the west of him and defendant in error with his wheelbarrow on the second plank from the east edge of that scaffold and about two inches from the other wheelbarrow attempted to pass Magliano; that by reason of a wire in the rim of the tray of his wheelbarrow sticking out from the westerly side thereof defendant in error's wheelbarrow touched the other wheelbarrow and unbalanced him, and his wheelbarrow dumped over on the east edge of the scaffold and the lone plank and threw most of the mortar on the lower floor, and threw defendant in error over the lone east plank down on to the first floor against an iron beam and very seriously injured him; that defendant in error had done that character of work for about two and a half years, and he testified that that was the first day he had worked on that building, but that the first trip he made along that platform he saw just how wide it was between the brick and the east edge of the scaffold, and that those brick were there all that morning, and he had had no trouble prior to the last trip in passing the wheelbarrows along there, and that he did not know the wire was projecting from his wheelbarrow; and that every trip he got a different wheelbarrow, as he took whichever one came upon the hoist first, on his return to the hoist. Magliano testified that when the wire touched his wheelbarrow that it did not "jar or wiggle it." Plaintiff in error introduced no evidence, but moved the court to instruct the jury to find the defendant not guilty and submitted the proper instruction therefor in writing. The court denied the motion and the jury returned a verdict of guilty and assessed defendant in error's damages at one thousand dollars, upon which the court entered judgment after overruling motions in arrest of judgment and for a new trial.

Plaintiff in error's contention that the evidence does not support the common law action indicated in defendant in error's second count or charge must be sus-

tained, as there is no evidence whatever to support it. Defendant in error testified that Magliano was a careful man, and that he had seen him do lots of work prior to the injury in question, and there is no evidence to the contrary. It is also true that the doctrine of assumed risk is a bar to any common law action based upon any charge of negligence in the construction or maintenance of a reasonably safe scaffold upon which defendant in error was employed to do his work, as it was very simple in construction and the danger in working thereon was equally as open and apparent to defendant in error as it was to plaintiff in error. The first count, however, was not based upon common law negligence by defendant in error, and the count so indicates. The cause of action is not for failure to furnish or maintain a reasonably safe scaffold, but is for failure to furnish a safe and proper scaffold, as required by section 79, ch. 48, Hurd's R. S. (J. & A. ¶ 5368), as defendant in error insisted in the court below and now insists here. That statute provides as follows: "That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation, in this State, for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated, as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon."

This statute, as declared in its title, was enacted June 3, 1907, "for the protection and safety of persons in and about the construction, repairing, alteration, or removal of buildings, bridges, viaducts, and other structures, and to provide for the enforcement

thereof.'' Section 82 (J. & A. ¶ 5371) thereof empowers the State factory inspector to inspect any such scaffold and to prohibit the use thereof when found to be dangerous to life or limb, and after such notice or warning the person responsible therefor shall cease the use thereof, until it is altered or strengthened ''in such manner as to render it safe.'' Section 88 (J. & A. ¶ 5377) provides for a penalty of not less than twenty-five, nor more than five hundred dollars, or imprisonment for not less than three months nor more than two years, or both such fine and imprisonment, for the violation of the said act by any owner, contractor or other person having charge of the erection, repairing, altering, removing, or painting of any such structures. That section also authorizes the State factory inspector to enforce the statute through the State's Attorney or other attorney in case the State's Attorney fails to act, and ''for any injury to persons or property, occasioned by any willful violation of this act, or willful failure to comply with any of its provisions,'' it gives a right of action to the party injured for ''any direct damages sustained thereby.''

We cannot agree with plaintiff in error's contention that the evidence in this record does not tend to show a willful violation of the statute on its part. The words ''shall be erected and constructed in a safe, suitable and proper manner,'' and ''placed and operated, so as to give proper and adequate protection'' to life and limb, are plain and simple words of well known meaning. ''Safe'' means ''free from harm, injury or risk,'' as defined in Webster's New International Dictionary. It means ''free from risk,'' not ''dangerous,'' as used in the statute. The scaffold without the single plank was not free from risk to employes. It was dangerous, and was so recognized by plaintiff in error, or the single plank way or ''safety catch'' for men who might stumble or be overbalanced would not have been added to the scaffold. We are not sure that the

scaffold is more safe with the plank way added. It is sure that it only removes a few more chances of injury, and still furnishes very many chances of injury to those working upon and under it. There was no rail or other such barrier to prevent men or material from falling therefrom, and while the statute does not specifically name the appliance that shall be used for that purpose, nevertheless in this instance it was necessary that some such barrier or an equivalent be used to furnish the adequate and proper protection to the laborers contemplated by the statute.

The verdict of the jury finding that plaintiff in error was guilty of a willful violation of the statute is amply sustained. Every argument offered by plaintiff in error tending to show knowledge of danger to defendant in error while working on the scaffold applies with equal force and weight to a like knowledge of plaintiff in error.

The court in this case instructed the jury, in substance, that contributory negligence of defendant in error and knowledge of the danger on his part without complaint to plaintiff in error would be a bar to his recovery, although plaintiff in error had willfully violated the statute and thereby caused his injury. It is argued that the verdict of the jury is not supported by the evidence, because it clearly shows that defendant in error was guilty of contributory negligence and that he assumed the risk. We do not care to enter into a discussion of those questions. The doctrines of assumed risk and of contributory negligence have no application to the statute in question, and furnish no defense thereunder. This statute being passed specially for the protection and safety of men engaged in structural work, etc., must receive the same construction as our statute on Mines and Miners, as it gives a right of action for a willful violation of the statute in precisely the same language as section 33 of the Mining Act in force when the statute in question was passed.

The Mining Statute differs from the present statute in specifying the exact things required of a mine owner to make his mine safe for employes therein, and in being further supported by a constitutional provision requiring the passage of such an act. The statute in question, however, could not in the very nature of things go into the particulars of what should be required to make scaffolds for buildings, etc., safe, their safeness depending so much upon their height from the earth and the purposes for which they are to be used. Neither of these differences are in the way of the holding that contributory negligence of defendant in error and his knowledge of the danger will not bar his right to recover in this case. The Supreme Court has held in the case of *Streeter v. Western Wheeled Scraper Co.*, 254 Ill. 244, that the defense of assumed risk is not a bar to a laborer's right to recover damages for a violation of the Factory Act, which is an act included in the same chapter as the act in question, under the general head of "Employment." The Factory Act gave no right of action to an employe injured by reason of a violation thereof, and, yet, it was held in that case that that statute should receive a similar construction in regard to the defense of assumed risk as the Mining Act had received. The Supreme Court said in the above case: "A constitutional law is of as much force as the constitution itself."

All the reasons given in that case for barring the said common law defenses are equally and even more applicable here, because the statute in question gives the same character of action to an injured employe as the Mining Statute. For more than forty years it has been held to be the law of Illinois that contributory negligence and knowledge of the danger would not bar a miner's right of recovery for personal injuries caused by a willful violation of the mining act. *Catlett v. Young,* 143 Ill. 74; *Carterville Coal Co. v. Abbott,* 181 Ill. 495; *Spring Valley Coal Co. v. Patting,*

210 Ill. 342; *Waschow v. Kelly Coal Co.*, 245 Ill. 516.

As said in *Catlett v. Young, supra*, it was evidently the purpose of the legislature to prevent injuries to persons employed on scaffolds, so that "the slightest degree of negligence might not prove fatal."

A willful violation of the statute is one consciously or knowingly committed. *Catlett v. Young, supra; Mertens v. Southern Coal & Mining Co.*, 235 Ill. 540.

The court's holding as to the law was more favorable to plaintiff in error than was its right, and there is no cause of complaint in that regard.

The contention of plaintiff in error that the verdict of the jury is not supported by the statement of claim is also untenable. No written pleadings are required in fourth class actions in the Municipal Court, such as is this case. It is not necessary that he properly name his right of action. "If upon hearing the evidence he appears to be entitled to recover and the court had jurisdiction of the defendant and of the subject-matter," it is sufficient when the defendant is apprised by the statement of the nature and character of the suit brought. *Edgerton v. Chicago, R. I. & P. Ry. Co.*, 240 Ill. 311.

There is no reversible error in the record and the judgment is affirmed.

*Judgment affirmed.*